

# THE ATTORNEY GENERAL
## OF TEXAS

AUSTIN 11, TEXAS

GROVER SELLERS
XXXXXXXXXXXXXXXXXXXXXXXX
ATTORNEY GENERAL


Honorable W. P. Herms, Jr.
County Auditor
Waller County
Hempstead, Texas

Dear Sir:

Opinion N⁰. 0-7207
Re: Whether Waller County Funds are
adequately protected by certain
pledged securities now deposited
in certain banks for safekeeping

Your letter of recent date requesting an opinion from this department on the above subject matter is as follows:

"The Citizens State Bank, Hempstead, Texas, County depository for Waller County, in making its depository bond, has pledged U. S. Treasury Bonds and notes in the amount of $720,000.00; such bonds being deposited with Federal Reserve Bank of Dallas, The City National Bank of Houston and San Jacinto National Bank of Houston.

"Please find inclosed a photostatic copy of safekeeping instrument issued by Federal Reserve Bank of Dallas for $500,000.

"The receipts from other banks mentioned above read:

"THE CITY NATIONAL BANK:

Three receipts for a total of $20,000 Treasury Bonds, showing 'Received from Citizens State Bank, Hempstead, Texas and A. B. Anderson, County Judge, or his Successor in office, jointly.'

"SAN JACINTO NATIONAL BANK:

Two receipts for a total of $100,000 U. S. Treasury Notes and Bonds, receipts reading 'Received of Citizens State Bank of Hempstead, Hempstead, Texas and Geo. O. Crump, County Judge of Waller County, Texas (or his successor

in office).  On each of the above receipts
the following notation is made:  '(This de-
posit constitutes a pledge by Citizens State
Bank of Hempstead to Secure County Funds of
Waller County, Texas, and notes will be re-
leased only on written order from the County
Judge of Waller County, Texas.)'

"THE CITY NATIONAL BANK:

One receipt U. S. Treasury Bonds for $100,000,
receipt showing 'Received from Citizens State
Bank, Hempstead, Texas, and A. B. Anderson,
County Judge, or his Successor in office,
Jointly'.  Notation typed on bottom of such
receipt reads:  'Held in safekeeping at Manu-
facturers Trust Company, New York, N. Y.'

"By written statement to the Commissioners' Court
on March 11, 1946, I pointed out to the Commissioners'
Court that said safekeeping receipts were made to the
depository and Waller County, jointly, and in my opinion,
according to Art. 2547, R.C.S., such receipts should read
'Received from the Commissioners' Court of Waller County',
alone, and that such joint receipt issued to both the
bank making the bond and Waller County, defeats the very
purpose for which the bond is made, since the effective-
ness of such a bond is necessarily limited to the consent
and direction of the institution making the bond.

"My basis for such advice to the Commissioners'
Court was derived from Article 2547 (c) which reads in
part:  'In lieu of such personal bonds.......said deposi-
tory bank is authorized to pledge with the Commissioners'
Court for the purpose of securing such County Funds,
securities of the following kind. . . . ., to wit:'

"Article 2547 (c) further provides: 'Upon the re-
quest of the depository bank, the Commissioners' Court
shall surrender interest coupons or other evidence of
interest, when due, on securities deposited with the Com-
missioners' Court by such depository bank, provided said
securities remaining pledged are ample to meet the re-
quirements of said Commissioners' Court.'

"The foregoing seems to contemplate the exclusive
control or possession by the Commissioners' Court of
securities pledged by Depository Bank for Depository Bond.

"In the above referred to and inclosed photostatic copy of safekeeping receipt of Federal Reserve Bank of Dallas, paragraph No. 1, No. 5, and No. 8, are particularly referred to, my own interpretation of these paragraphs, taken as a whole, and in their entirety, being that the depository bank which is bonded, has more control over the securities representing the bond, than does Waller County, to whom the bond is made, and to whom such bond should be made payable <u>unconditionally</u>. In the event of loss by Waller County, if such loss can not be made up by the liquidation of such securities so pledged, and if same can not be done without the consent of the institution making the bond, then such a condition contemplates a law suit before collection on a loss can be sustained.

"My questions:

"1.  Are Waller County Funds adequately protected as contemplated by the statutes governing same?

"2.  If your answer to Question No. 1 above is 'No', what steps should be taken to comply with the statutes?"

Article 2547, subdivision (c), is in part as follows:

"<u>In lieu of such personal bonds or surety bonds as above specified</u>, said banking corporation, association or individual banker so selected as county depository, may pledge, and said depository bank is authorized to pledge with the Commissioners' Court for the purpose of securing such county funds, securities of the following kind, in an amount equal to the amount of such county funds on deposit in said depository bank, to-wit:  bonds and notes of the United States, securities of indebtedness of the United States, and other evidences of indebtedness of the United States, when said evidences of indebtedness are supported by the full faith and credit of the United States of America, and other bonds or other evidences of indebtedness which are guaranteed as to both principal and interest by the United States Government, bonds of the State of Texas, ........ <u>and such securities so pledged by such depository bank shall be deposited as the Commissioners' Court may direct.</u>"

We note that the Commissioners' Court of Waller County in accordance with the provisions of the foregoing Article has directed that certain securities pledged by the

depository bank be deposited in the Federal Reserve Bank of Dallas for safekeeping as evidenced by the following agreement, a photostatic copy of which you enclosed with your request:

"APPLICATION TO FEDERAL RESERVE BANK OF DALLAS REQUESTING THAT IT ACCEPT CERTAIN SECURITIES FOR SAFEKEEPING

"Whereas, the undersigned Depository has been duly and legally designated, and has done all things and performed all acts necessary to qualify as the public depository of the funds of the undersigned Depositor; and

"Whereas, to secure the funds deposited with it, the Depository has in accordance with law pledged with the Depositor the following securities:

". . . . . .(Description of $500,000.00 U.S. Treasury Bonds omitted)

"(In the above space give complete description of securities offered for safekeeping. If above space is not sufficient, continue description on reverse side hereof.)

"And whereas, other and additional securities may be pledged by the Depository with the Depositor at some future time; and

"Whereas, both the Depositor and Depository desire and hereby request that the Federal Reserve Bank of Dallas accept the securities above described, or any hereafter tendered, to be held by it for the joint account of the Depositor and Depository under such joint safekeeping receipts as it may desire to issue:

"Now, therefore, in consideration of the premises, and as an inducement to the Federal Reserve Bank of Dallas gratuitously to hold for safekeeping the above described securities or any other additional or substituted securities which may hereafter be tendered to it, it is agreed by and between the Depositor and Depository for the benefit of themselves and of the Federal Reserve Bank of Dallas should it agree to act in the capacity requested, as follows:

"1. The agreement of the Federal Reserve Bank of Dallas to act under this application in the capacity requested shall be evidenced by the issuance of its Joint Safekeeping Receipt, and it is understood and agreed

that such receipt, if issued, shall be subject to
the terms and conditions hereinafter set out.

"2.   The Federal Reserve Bank of Dallas shall act
only as a gratuitous bailee.  It shall give the securities
hereinabove described, or any taken in substitution there-
for or in addition thereto, the same care that it gives
to its own property of like kind, but otherwise it shall
be liable only for its own negligence or for failure to
comply with the terms of this agreement.

"3.   The Federal Reserve BAnk of Dallas need not
maintain any form of insurance for the account of the
Depositor and/or Depository on the securities placed with
it under this agreement.  The Depositor and Depository
shall carry for their own account such insurance as they
think necessary or desirable.

"4.   Substitutions may be made for any of the above
described securities or any additional securities which
may be tendered and accepted, or for securities which
have been previously substituted under the terms of this
paragraph, upon joint request of the Depositor and Deposi-
tory when accompanied by authority, given under proper
resolution of the Governing Body hereinafter referred to.
Such substituted or additional securities shall be held
subject to the terms and conditions of this agreement.

"5.   The securities above described, or any addi-
tional securities which may be tendered and accepted, or
any taken in substitution therefor, shall be surrendered
only upon the join request of the Depositor and Depository,
and then only when accompanied by authority, given under
proper resolution of the Governing Body hereinafter referred
to.

"6.   The Federal Reserve Bank of Dallas shall in no
manner be responsible for the genuineness, negotiability,
acceptability, or eligibility of the securities delivered
to it under this application.  Its only responsibility is
to hold such securities as may be delivered to it, in ac-
cordance with this agreement.

"7.   The Federal Reserve Bank of Dallas in authorized
to clip the maturing interest coupons on the securities
which it holds under this agreement and deliver them or
their proceeds to the Depository; provided, however, that
if and whenever, notified by the Depositor in writing to
discontinue this practice the said Federal Reserve Bank
shall obey such instructions, and it shall thereafter hold

such maturing interest coupons without collection.

"8. The Federal Reserve BAnk of Dallas is authorized to act upon instruction given under the signature of any officer of the Depository on file with it. The signature of the Depositor is that appended to this agreement, and the said Federal Reserve Bank is authorized to act upon instructions given under this signature. If there should be a successor to anyone authorized to sign for the Depositor named herein before the full delivery of all securities covered by any Joint Safekeeping Receipt issued upon this application, including substitutions, it shall be the duty of the Governing Body hereinafter named to certify the name and signature of such successor or successors to the Federal Reserve Bank of Dallas, and thereafter said bank shall be authorized to act upon this signature to the same extent as under the signature of the Depositor named herein.

"9. The Governing Body referred to in this instrument is Commissioners Court of Waller County, Hempstead, Texas and said body, by proper resolution spread upon its minutes, fully authorized the execution of this agreement by the Depositor.

"In witness whereof, this agreement is executed in triplicate, a copy being intended for each the Depositor, the Depository and the Federal Reserve Bank of Dallas, on this the 23rd day of February, 1946.

"Commissioners Court, Waller County, Hempstead, Tex.

"By                    COUNTY JUDGE
                         Depositor

"CITIZENS STATE BANK OF HEMPSTEAD, TEXAS

"By                    VICE PRESIDENT
                         Depository."

According to your letter, similar agreements have been entered into with City National Bank of Houston and the San Jacinto National Bank of Houston. We have carefully considered the above quoted agreement, and it is our opinion that the provisions of said agreement are in compliance with the applicable provisions of Article 2547, subdivision (c), V.A.C.S. Therefore, in answer to your first question, it is our opinion that Waller County Funds are adequately protected to the extent of the amount of pledges included in the above mentioned agreements.

Our answer to your first question precludes the necessity of answering your second question.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By s/J. C. Davis, Jr.
J. C. Davis, Jr.
Assistant

By s/John Reeves
John Reeves

JR:djm:wc

APPROVED MAY 13, 1946.
s/Carlos C. Ashley
FIRST ASSISTANT
ATTORNEY GENERAL

Approved Opinion Committee By_s/BWB_Chairman